UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
_____

In re:

    James W. Blakesley, Jr.,                     Bankruptcy Case No. 19-20566-PRW
                                                  Chapter 7

                    Debtor,

_____

    Douglas J. Lustig,
         as Chapter 7 Trustee,

                    Plaintiff,

                vs.                                            Adversary Proceeding No. 21-2001-PRW

    Lisa J. Blakesley,

                    Defendant.
_____

**DECISION AND ORDER
GRANTING MOTION TO VACATE DEFAULT JUDGMENT
UNDER RULE 60(b)(1) FRCP**

PAUL R. WARREN, U.S.B.J.

      Lisa J. Blakesley, the Defendant in this adversary proceeding, has moved to vacate a default judgment entered in favor of the Trustee, under Rule 60(b)(1) FRCP.[1] The Trustee has opposed the motion clamorously. Following a flurry of submissions by both parties, the Court heard argument on December 9, 2021, after which the matter was taken under submission. For the reasons that follow, Ms. Blakesley's motion to vacate the default judgment is **GRANTED**, under Rule 60(b)(1) FRCP.

---

[1]     Rule 60(b) is made applicable in adversary proceedings by Rule 9024 Federal Rule of Bankruptcy Procedure ("FRBP").

# I.
# JURISDICTION

The Court has jurisdiction under 28 U.S.C. §§ 157(a), 157(b)(1) and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (F) and (O).

# II.
# ISSUE

The question presented is whether, on the specific facts having evidentiary support in the record, Ms. Blakesley has carried her burden, under Rule 60(b)(1) FRCP, to justify *vacatur* of the default judgment entered against her. Applying the standards established by Second Circuit precedent, the answer is yes.

# III.
# FACTS

James Blakesley[2] filed a petition under Chapter 7 on June 6, 2019. (Case No. 19-20566, ECF No. 1).[3] In Schedule A/B of his petition, Mr. Blakesley listed his interest in Ms. Blakesley's 401(k) account in the amount of $90,000 arising out of a "divorce property settlement" (it also arose out of a Judgment of Divorce). (ECF BK No. 1, Sch. A/B ¶ 29). On Schedule C of his petition, Mr. Blakesley listed his interest in the funds in that 401(k) account as fully exempt, in the total amount of $90,000. (*Id.* at Sch. C). The docket in the bankruptcy case reflects that no objection to the

---

[2] Mr. Blakesley is the former spouse of the Defendant.

[3] References to the docket for the adversary proceeding (Case No. 21-2001) are identified as "ECF AP" and references to the docket in the main bankruptcy case (Case No. 19-20566) are identified as "ECF BK."

exemptions claimed by Mr. Blakesley was ever filed—and the time to object has long since passed.[4] The docket further reflects that the exemptions claimed by Mr. Blakesley have never been amended, modified or waived—and there is no evidence in admissible form that Mr. Blakesley has ever done so. Mr. Blakesley was granted a discharge (ECF BK No. 29) but the bankruptcy case has remained open due to the Trustee's designation of the case as a "possible asset" case. (ECF BK No. 31).[5] The Complaint sought turnover of the money owed by Ms. Blakesley to Mr. Blakesley, in an amount not less than $89,000, under the Separation, Property Settlement and Opting Out Agreement. (ECF AP No. 1 ¶¶ 11, 13, 16, 17). A Summons and Complaint was served on Ms. Blakesley on August 11, 2021, with copies also provided to Mr. Blakesley and the attorney who represents him in the Chapter 7 case. (ECF AP No. 4). Service of the Summons and Complaint was made by regular first class mail, as permitted by Rule 7004(b)(1) FRBP. (*Id.*).

Ms. Blakesley did not answer the Complaint or otherwise appear in the adversary proceeding—her time to do so expired on September 13, 2021 (including 3 extra days for service by mail). *See* Rule 7012(a) FRBP. A few weeks later, the Trustee applied for the entry of a default against Ms. Blakesley. (ECF AP No. 5). The Clerk entered a default against Ms. Blakesley the next day. (ECF AP No. 6). The Court subsequently entered a default judgment in favor of the Trustee and against Ms. Blakesley, under Rule 55(b)(2) FRCP, in the amount of $90,000—the amount of money due from Ms. Blakesley under the state court's Judgment of Divorce. (ECF AP No. 8). The adversary proceeding was promptly closed. As *had* been this Court's procedure for

---

[4]  The Court can always take judicial notice of its docket. *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006).

[5]  Because the Chapter 7 case was designated as having a "possible asset" it remains open. However, the Trustee has not requested that the Clerk of Court issue a "notice of assets" to creditors. As a result, no proofs of claim have ever been filed.

3

Case 2-21-02001-PRW, Doc 31, Filed 12/16/21, Entered 12/16/21 15:10:10, Description: Main Document , Page 3 of 18

more than 30 years, the default judgment was granted on a simple application, not by motion on notice to Ms. Blakesley.[6]

A few weeks later, counsel to Ms. Blakesley filed an "Ex Parte Application to Re-Open Adversary Proceeding," citing as authority § 350 of the Code. (ECF AP No. 11). The Clerk issued a deficiency notice requiring the request to be made by motion on notice, in keeping with this Court's long-standing practice requirements. *In re Christensen*, No. 09-20299-PRW, 2015 Bankr. LEXIS 3506, at *3 n.4 (Bankr. W.D.N.Y. Oct. 16, 2015) (Warren, J.); *In re Gill*, 529 B.R. 31, 34 n.2 (Bankr. W.D.N.Y. 2015) (Warren, J.). Counsel to Ms. Blakesley then filed a motion, on notice to the Trustee, requesting that the Court reopen this adversary proceeding under § 350(b) of the Code, and, additionally, requesting that the Court vacate the default judgment under Rule 60(b) FRCP. (ECF AP Nos. 14 and 16—the latter being an amendment to the notice of motion to identify the proper time of day for a hearing on the motion). Included with that motion was an affirmation from Ms. Blakesley and a memorandum of law in support of the motion. (ECF AP No. 14-2 & 14-4). Ms. Blakesley admits to having received the Summons and Complaint at her residence in September 2021, but can't recall reading it; nor does she recall having received any prior notice or communication from the Trustee concerning the 401(k) issue. (ECF AP No. 14-2 ¶¶ 11-13). Ms.

---

[6] The Court has been deliberate in its use of the word "*had*" in this sentence. For more than 30 years (and possibly longer than 40 years) only where the debtor was the defendant in an adversary proceeding was a motion (on notice) required to obtain entry of a default judgment. Because default judgments have been exceedingly rare (in this Court's experience) that procedure was not problematic. This case has, however, demonstrated the need to revisit and revise this decades-old practice. *Going forward, this Court will grant default judgment in any adversary proceeding only after a motion by the plaintiff(s), on notice to and properly served on the defendant(s), under this Court's Negative Notice Procedures. Proof of all factual allegations in the Complaint must be supported by an affidavit, under Rule 55(b)(2)(C) FRCP, with evidence in admissible form establishing the truth of the allegations in the Complaint, in a motion seeking entry of a default judgment.*

4

Blakesley does recall receiving a copy of the default judgment that was delivered to her by mail in October. (ECF AP No. 14-2 ¶ 14).

In the motion, Ms. Blakesley asserts that the default judgment should be vacated by this Court, under Rule 60(b)(1) FRCP, for her excusable neglect in failing to timely answer. First, Ms. Blakesley points out that, prior to receiving a copy of the default judgment, the only communication she received concerning this action was the Summons and Complaint delivered to her by regular first class mail—which she admits to having ignored. (ECF AP No. 14-2 ¶¶ 11-13). Next, Ms. Blakesley argues that she has a meritorious defense to the action. Specifically, it is argued that, because Mr. Blakesley's interest in the money in the 401(k) was disclosed in his schedules and claimed as fully exempt, it ceased to be property of the estate by operation of law due to the failure of the Trustee to object to the claimed exemption. (ECF AP No. 14 ¶¶ 5-6). Therefore, the argument goes, the Trustee has no authority to pursue property that is not property of the bankruptcy estate.

The Trustee filed opposition to the motion, asserting various grounds why the default judgment should not be vacated. (ECF AP Nos. 20, 22).[7] First, the Trustee asserts that Ms. Blakesley's failure to answer the Complaint was calculated and willful. (ECF AP No. 22 ¶¶ 48-71). Next, the Trustee argues that Ms. Blakesley has no defense to the underlying action, because the Trustee and Mr. Blakesley "agreed to resolve any interest or exemption that the debtor may have in the retirement monies." (*Id.* at ¶ 36). In simple terms, the Trustee is alleging that, despite the passage of two years since the time to challenge the exemption having lapsed, Mr. Blakesley has agreed to waive his claim of exemption. (No evidence in admissible form is submitted by the

---

[7] The Court will refer only to the documents filed at ECF AP No. 22, as that filing corrected a technical error with the earlier filing. Substantively, the filings are identical, so no purpose would be served in referring to both filings.

5

Trustee to support this assertion.) Finally, the Trustee argues that he would be prejudiced by *vacatur* of the default judgment, because he has taken steps to enforce the judgment and because Ms. Blakesley agreed to settle this action—seemingly suggesting that she did so before the motion to vacate the default judgment was filed. (*Id.* at ¶¶ 82-89). (No evidence in admissible form is submitted by the Trustee to support this second assertion.)

## IV.

## DISCUSSION

### A. Reopening the Adversary Proceeding Is Unnecessary

Counsel to Ms. Blakesley titled the motion as "Motion to Reopen Adversary and Vacate Default Judgment." (ECF AP No. 14). But, nowhere in the motion or the memorandum of law in support of the motion does counsel cite to any Code provision, Rule or caselaw to support the request. In fact, other than in the title of the motion, counsel to Ms. Blakesley doesn't even mention "reopening" the adversary proceeding again (except in the prayer for relief at the end of the motion). But no matter. Like a greyhound chasing a mechanical rabbit, counsel to the Trustee was off on the chase. Citing § 350(b) of the Code and the Second Circuit's decision in *In re Chalasani*, 92 F.3d 1300 (2d Cir. 1996), the Trustee argues that Ms. Blakesley has failed to demonstrate cause to reopen the adversary proceeding. (ECF AP No. 22-7 at 9-10). On that basis, the Trustee concludes that the motion should be denied in its entirety.

The Trustee's analysis of the applicability of § 350(b) of the Code to the motion at hand is entirely misplaced. Section 350(b) of the Code applies only to reopening *bankruptcy cases*, not to adversary proceedings. The plain language of § 350(b) of the Code makes it readily apparent that it applies to the closing and reopening of the bankruptcy case: "(a) After an *estate is fully*

6

Case 2-21-02001-PRW, Doc 31, Filed 12/16/21, Entered 12/16/21 15:10:10, Description: Main Document, Page 6 of 18

*administered* and the *court has discharged the trustee*, the court shall close *the case*. (b) *A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.*" 11 U.S.C. § 350(b) (emphasis added). There is no "estate" in an adversary proceeding. There is no "trustee" to be discharged in an adversary proceeding. The estate and the trustee are creatures that exist in a *bankruptcy case*. Would it have been more precise if Congress had included the word "bankruptcy" before the word "case" in § 350(a) and (b)? No doubt. But the context in which Congress used the word "case" in those subsections leaves no room for doubt—except, apparently, here in the Trustee's mind.

The Second Circuit has also observed that *a bankruptcy case*, if closed, must first be reopened under § 350(b) of the Code, before a defendant can seek to vacate a default judgment in an adversary proceeding. *See In re Chalasani*, 92 F.3d 1300 (2d Cir. 1996). Puzzlingly, the Trustee relies on *Chalasani*, quoting a passage at some length in his memorandum of law, to argue that it is necessary for Ms. Blakesley to both demonstrate cause to reopen this adversary proceeding under § 350(b) and, if successful, to then demonstrate a basis to vacate the default judgment. (ECF No. 22-7 at 9). The Trustee's reliance on *Chalasani*—for the proposition that this Court must first find "cause" to reopen the adversary proceeding under § 350(b), before the Court can consider the request to vacate the default judgment under Rule 60(b) FRCP—appears to be the result of a careless reading of that case. The Court will give counsel the benefit of the doubt that it was carelessness, and not an attempt at mischief, that is the basis for his argument.

In *Chalasani*, the debtor filed a Chapter 7 case. *In re Chalasani*, 92 F.3d at 1305. While the bankruptcy case was pending (or "open"), State Bank of India commenced an adversary proceeding against Mr. Chalasani. *Id.* The bankruptcy court entered a non-dischargeable default judgment for approximately $1.7 million against Mr. Chalasani and in favor of State Bank, and the adversary

7

proceeding was concluded. *Id.* The bankruptcy case continued on, presumably as the trustee administered the case. *Id.* at 1306. The *bankruptcy case* was closed and a final decree issued several months after the adversary proceeding had been concluded. *Id.* Only after the *bankruptcy case* had been closed did Mr. Chalasani, through new counsel, file a motion seeking to reopen *the bankruptcy case* and to also vacate the default judgment in the adversary proceeding. *Id.* The motion to reopen the *bankruptcy case* was denied by the bankruptcy court, but, as the Second Circuit observed, the bankruptcy court's order did not make it clear whether the denial was with respect to reopening the bankruptcy case or *vacatur* of the default judgment in the adversary proceeding. *Id.* at 1307. Regardless, the Second Circuit *did not* hold (or even hint) that § 350(b) applied to reopening an *adversary proceeding*, as is suggested by counsel to the Trustee here. Quite the opposite.

"A district court does not need an independent basis to reopen a civil proceeding before considering a motion for relief from a judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. Rather, such a motion is deemed a continuation of the original proceeding." *In re Sun Healthcare Group, Inc.*, Case No. 99-03657 (MFW), A.P. Nos. 01-7671 & 01-7480 (MFW), 2004 Bankr. LEXIS 572, at *16-17 (Bankr. D. Del. Apr. 30, 2004) (citing 12 *Moore's Federal Practice* § 60.61 (Matthew Bender 3d ed. 1999)). *See also In re Ander*, Case No. 13-25279-B-7, AP No. 13-2225, 2015 Bankr. LEXIS 1352, at *9-10 (Bankr. E.D. Ca. Apr. 15, 2015).

Here, the bankruptcy case is and has remained open continuously since the Chapter 7 petition was filed. Consequently, Ms. Blakesley's suggestion—in the title of the motion—that the adversary proceeding must be "reopened," and the Trustee's argument that the motion to reopen should be denied under § 350(b) of the Code (thereby sinking with it the motion to vacate the default judgment), are misplaced and lack any legal authority in support of either position. Because

8

it is unnecessary for the Court to "reopen" the adversary proceeding to entertain Ms. Blakesley's motion to vacate the default judgment, the Court will disregard both the request and the response as being off the mark.

**B.  The Default Judgment Should Be Vacated Under Rule 60(b)(1) FRCP**

Rule 55(c) FRCP provides that "[t]he Court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)."  Here, Ms. Blakesley has moved to vacate the default judgment under Rule 60(b)(1) FRCP (and presumably Rule 55(c) FRCP), claiming "excusable neglect" in failing to either answer the Complaint or otherwise appear in the adversary proceeding.

The Second Circuit has established very clear overarching principles to be followed by the trial court in deciding whether to grant relief to a party seeking *vacatur* of a default judgment.[8] And, when applying the Second Circuit's three-factor test in deciding whether to vacate a default judgment, the trial court is to be mindful that the Second Circuit has expressed a strong "preference for resolving disputes on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). *See also American All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) ("Strong public policy favors resolving disputes on the merits.").  "Motions to set aside default judgments should be granted liberally." *Crawford v. Nails on 7th by Jenny Inc.*, No. 18 Civ. 9849 (ER), 2020 U.S. Dist. LEXIS 19230, at *6 (S.D.N.Y. Feb. 5, 2020) (citing *Standards Enters., Inc. v. Bag-It, Inc.*, 115 F.R.D. 38, 39 (S.D.N.Y. 1991)).  "Rule 60(b) is its strongest in the context of setting aside default

---

[8]  It is not lost on the Court, but appears to have been lost on the Trustee, that the Second Circuit has engaged in a fact-intensive analysis, in each of its decisions, to determine whether a lower court's denial of a motion to vacate a default judgment finds support in the Circuit's three-factor test.  While the Trustee's brief correctly states the applicable test and the outcome of the Second Circuit cases he cites, the specific *facts* that drove the outcome of each case have been glossed over or completely ignored.

judgments . . . There is much more reason for liberality in reopening a judgment when the merits of the case never have been considered . . . ." *Standards Enters., Inc.*, 115 F.R.D. at 39. "[I]n ruling on a motion to vacate a default judgment, 'all doubts must be resolved in favor of the party seeking relief from the judgment in order to ensure that to the extent possible, disputes are resolved on their merits.'" *Gesualdi v. Quadrozzi Equip. Leasing Corp.*, 629 F. App'x 111, 113 (2d Cir. 2015) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). *See also Robinson v. Sanctuary Music*, 383 F. App'x 54, 58 (2d Cir. 2010); *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 172 (2d Cir. 2001). "Nonetheless, default judgment is an appropriate sanction for 'defaults that arise from egregious or deliberate conduct.'" *DIRECTV, LLC v. Wright*, No. 15-CV-474-FPG, 2019 U.S. Dist. LEXIS 216133, at *16 (W.D.N.Y. Dec. 16, 2019) (Geraci, C.J.) (quoting *1st Bridge LLC v. 682 Jam. Ave., LLC*, No. 08-CV-3401(NGG)(MDG), 2009 U.S. Dist. LEXIS 8859, at *2 (E.D.N.Y. Feb. 4, 2009) (quoting *American All. Ins. Co.*, 92 F.3d at 61)).

Under the umbrella of those overarching principles, the Second Circuit has established a three-factor test for trial courts to apply in deciding a motion to vacate a default judgment under Rule 60(b): "(1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." *De Curtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013) (internal quotation marks and citation omitted). *See also W.B. David & Co. v. De Beers Centenary AG*, 507 F. App'x 67, 69 (2d Cir. 2013); *Pecarsky*, 249 F.3d at 171; *American All. Ins. Co.*, 92 F.3d at 59.

With those overarching principles and the three-factor test in mind, the Court turns to the parties' arguments for and against *vacatur* of the default judgment.

10

1. *Willfulness of the Defendant in Defaulting*

Ms. Blakesley, in arguing that her default was not willful, points to the undisputed fact that the only communication she received concerning this adversary proceeding was the Summons and Complaint delivered to her residence by regular first class mail. (ECF AP No. 14-2 ¶ 13). She does not dispute that she lives at the address to which the Summons and Complaint were mailed. (*Id.* at ¶ 12). She admits receiving the Summons and Complaint in September, but asserts that she doesn't think she read those documents. (*Id.* at ¶ 13).

On the other hand, the Trustee argues that Ms. Blakesley's conduct in ignoring the facially valid Summons is tantamount to a willful strategy to evade this litigation. (ECF AP No. 22 ¶¶ 47-81). The Trustee points to the fact that Ms. Blakesley ignored three letters from Mr. Blakesley's divorce attorney in March, April and May *2019*, concerning rollover of funds in her 401(k) and the need for Ms. Blakesley to cooperate in the preparation of a Qualified Domestic Relations Order. (ECF AP No. 22-6).

Here, it is undisputed that the only contact between the Trustee and Ms. Blakesley concerning this adversary proceeding was the delivery by regular first class mail of the Summons and Complaint. There was no pre-litigation demand letter.[9] There were no orders issued by this Court, after service of the Summons and before entry of the default judgment. There was no motion, on notice to Ms. Blakesley, requesting entry of the default judgment (admittedly as permitted by a long-standing practice of this Court—which practice has been abrogated as a result

---

[9] The Trustee's attempt to reach back to the 2018-2019 state court divorce action to bolster his claim that Ms. Blakesley made a strategic decision to default is unavailing. The question is not whether Ms. Blakesley was uncooperative in the divorce action in the state court two years ago. The question is whether the facts before *this Court* demonstrate a strategic decision by Ms. Blakesley to default. They do not.

11

of the lessons learned by the Court in this case). Here, there was but one single mailing to Ms. Blakesley—a mailing that contained a Summons, as permitted by Rule 7004(b)(1) FRBP. Ms. Blakesley admits receipt of the Summons and admits that she took no steps to respond. Was Ms. Blakesley's conduct negligent? Certainly. Was Ms. Blakesley's conduct grossly negligent? Perhaps.

The Second Circuit has refused to expand the standard for a finding of willfulness to include careless or negligent errors. *American All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). And the Circuit instructed that "[a] less rigorous construction [of "excusable neglect"] is appropriate for a lawsuit yet to be contested on its merits." *Id.* at 61 n.2. Further, the Circuit established that "[g]ross negligence can weigh against the party seeking relief from a default judgment, *though it does not necessarily preclude relief*." *Id.* at 61 (emphasis added). As with all decisions granting or denying relief from a default judgment under Rule 60(b)(1), the specific facts in the record necessarily drive the outcome. The vast body of Second Circuit decisions illustrate that point.

At most, Ms. Blakesley's conduct in ignoring the Summons was grossly negligent. There is no evidence that her conduct was deliberately evasive. The Court finds, on the facts in the record, this factor moves the needle in favor of Ms. Blakesley.

## 2. *Meritorious Defense Demonstrated by Defendant*

The next hurdle for Ms. Blakesley, to justify *vacatur* of the default judgment, is to demonstrate that she has a meritorious defense. "Whether a defense is meritorious is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *State St. Bank & Trust Co. v. Inversiones Errazuruz Limitada*, 374 F.3d 158, 167 (2d Cir. 2004) (internal quotation marks omitted) (quoting

12

*Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993)). *See also DIRECTV, LLC v. Wright*, No. 15-CV-474-FPG, 2019 U.S. Dist. LEXIS 216133, at *11-12 (W.D.N.Y. Dec. 16, 2019).

Here, Ms. Blakesley asserts that the Debtor's interest in her 401(k) was declared as fully exempt in Schedule C of the petition. (ECF AP No. 14-4 ¶¶ 2-3). She argues that, because that exemption was never challenged and the time to do so has long ago passed, the Debtor's interest in Ms. Blakesley's 401(k) ceased to be property of the estate by operation of law. *See* 11 U.S.C. § 522(c). In support of her claim of having a meritorious defense, Ms. Blakesley points to the fact that the Debtor has never amended Schedule C to remove that claim of exemption, and there is no evidence that he has waived that exemption.[10] (ECF AP No. 14 ¶¶ 5-6). That is a response to the substance of the Complaint, constituting the showing of a meritorious defense.

In opposition, the Trustee asserts that the Debtor has agreed to waive his claim of exemption with respect to the monies in Ms. Blakesley's 401(k) account. (ECF AP No. 22 ¶ 36). However, no evidence in admissible form is offered by the Trustee in support of that claim. The only evidence in the record is Mr. Blakesley's Schedule C (listing his interest in the funds in the 401(k) as exempt). Mr. Blakesley has never amended Schedule C to eliminate or waive that exemption and there is no other evidence in the record to prove that he did so. The Trustee's unsupported claim to the contrary is entitled to no weight.

---

[10] Counsel to Ms. Blakesley also points to potential counterclaims (erroneously described as cross-claims) she may have concerning offsets to the Judgment of Divorce. However, if those counterclaims were offered as the sole basis to claim that she has a meritorious defense, that may not have satisfied the meritorious defense factor. *See State St. Bank & Trust Co.*, 374 F.3d at 161 ("[W]e have never addressed whether a counterclaim, rather than a response to the substance of a complaint, may constitute a meritorious defense.").

13

The Court finds that, on the facts in the record, this factor also moves the needle in favor of Ms. Blakesley. If proved at trial, Ms. Blakesley's defense would constitute a complete defense to the action.

### 3. *Prejudice Has Not Been Demonstrated by the Trustee*

When opposing a motion to vacate a default judgment under Rule 60(b) FRCP, the nondefaulting party must show that it would be prejudiced by *vacatur* of the default judgment. Proof of prejudice generally requires a showing that there has been a delay (by the defaulting party) that "will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Robinson v. Sanctuary Music*, 383 F. App'x 54, 58 (2d Cir. 2010). *See also Crawford v. Nails on 7th by Jenny Inc.*, No. 18 Civ. 9849 (ER), 2020 U.S. Dist. LEXIS 19230, at *10 (S.D.N.Y. Feb. 5, 2020); *DIRECTV, LLC*, 2019 U.S. Dist. LEXIS 216133, at *14.

Here, the Trustee asserts that he would be prejudiced if the default judgment is vacated because he has taken steps to record the judgment with the District Court and the Ontario County Clerk, and has issued executions against Ms. Blakesley's accounts and income. (ECF AP No. 22 ¶ 87; ECF No. 22-7 at 16). The Second Circuit has flatly rejected such arguments as unpersuasive, observing that "[a]ttempting to execute the default judgment and to proceed against the individual defendants was the sensible next step for the plaintiffs at the time that the default judgment was entered, but does not establish that they would be prejudiced now by our decision to vacate the default judgment entered by the district court." *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 174 (2d Cir. 2001). *See also Crawford v. Nails on 7th by Jenny Inc.*, 2020 U.S. Dist. LEXIS 19230, at *10.

In a final effort to show prejudice, the Trustee asserts that Ms. Blakesley made an unconditional offer to settle this action, which was accepted by the Trustee. (ECF AP No. 22-7 at 16). At oral argument, counsel doubled-down on that claim—going so far as to assert that he has grounds to sue Ms. Blakesley for breach of a settlement agreement. Not only is there no settlement agreement included with the Trustee's submissions, the exhibits attached to the Trustee's papers seem to demonstrate that the factual contentions made at paragraphs 84 and 85 by counsel are inaccurate and lack evidentiary support, furrowing the brow of Rule 9011(b)(3) FRBP.

Specifically, counsel unequivocally asserts, *as fact*, that "[o]n November 8, 2021, after a week of negotiations between the undersigned and Mr. Wegman [attorney], this matter was settled with Ms. Blakesley's authority. On November 8, 2021, Mr. Wegman made an unconditional offer of $53,160 to settle this matter and the offer was accepted by the Trustee." (ECF AP No. 22 ¶ 85). To support his factual contention, counsel attached as an exhibit an email exchange between he and Mr. Wegman. (ECF AP No. 22-5, Ex. E). But, that exhibit tells a much different and troubling story.

According to the timeline that can be gleaned from that email exchange (ECF AP No. 22-5, Ex. E) and from the Court's docket, the actual series of events appears as follows:

1. Friday evening (Nov. 5, 2021) counsel to the Trustee left a voicemail with Mr. Wegman conveying the Trustee's offer to settle for $65,000, described as "take-it-or-leave-it."

2. Monday morning (Nov. 8, 2021) Mr. Wegman spoke with Ms. Blakesley about the Trustee's offer and she asked Mr. Wegman to contact the Trustee's counsel to offer $53,160.

3. On November 8, 2021, at 3:35 p.m., Mr. Scribner filed a Motion to Reopen Adversary Proceeding, with the stated intention of subsequently moving to vacate the default judgment. (ECF AP No. 11, time stamped 11/8/2021 at 3:35 PM EST). It appears, and is logical to conclude, that sometime prior to that time Mr. Scribner

15

also spoke with the Trustee's counsel, asserting the exemption defense and announcing his intention to file a motion seeking to vacate the default judgment.

4. Sometime after 4:00 p.m. (Nov. 8, 2021) Mr. Wegman contacted the Trustee's counsel to convey an offer that he believed he had authority to make for $53,160.00.

5. According to Mr. Wegman's email, by the time he called the Trustee's counsel, Mr. Scribner had *already* spoken to the Trustee's counsel and had *already* filed a motion on Ms. Blakesley's behalf—both of which the Trustee's counsel seems to have acknowledged having knowledge of, but neither of which Mr. Wegman was aware of.

6. On November 8, 2021, at 8:12:16 PM, counsel to the Trustee sent an email to Mr. Wegman stating—"The trustee accepts the $53,106." That email was sent five hours after Ms. Blakesley's motion was filed and more than five hours after Mr. Scribner spoke with counsel about his planned motion and defense to the action.

What the timeline appears to show is that at the time of the post-4:00 p.m. conversation with Mr. Wegman on November 8, 2021, counsel to the Trustee had *already* spoken to Mr. Scribner and was *already* aware of the pending motion announcing an intention to seek relief from the default judgment. Prior to that conversation, on November 5, 2021, it appears that the Trustee made an offer of $65,000 to settle. So, Mr. Wegman (unaware of Mr. Scribner's earlier conversation with the Trustee's counsel and unaware of the motion filed at 3:35 p.m. that afternoon) made a *counter-offer*, sometime after 4:00 p.m., on behalf of Ms. Blakesley to settle for $53,160. Nearly five hours after the motion had been filed by Mr. Scribner on Ms. Blakesley's behalf, clearly stating "[t]he Defendant has retained the undersigned to represent her in this matter" and unequivocally demonstrating an intention *not* to settle this action (ECF AP No. 11 ¶ 3), at 8:12:16 p.m. on November 8, 2021, the Trustee's counsel sent an email to Mr. Wegman—without notice to Mr. Scribner—purporting to accept the counter-offer. (ECF AP No. 22-5, Ex. E).

16

Counsel has pointed to no legal authority to support the proposition that a settlement counter-offer can be accepted by a party, where counsel to that party has actual knowledge (gained five hours prior to acceptance) that a different attorney has been retained by the counter-offeror and that new attorney has taken steps (after apparently having first communicated the intention to take those steps) that unequivocally demonstrate a withdrawal of the counter-offer prior to its acceptance.[11]  On the facts in the record, the Trustee's claim of prejudice concerning the purported settlement agreement is found to have no merit.  The Trustee has failed to carry his burden of demonstrating prejudice, sufficient to deny the *vacatur* of the default judgment.

## V.

## CONCLUSION

The Second Circuit has repeatedly reminded the trial courts that default judgments are disfavored.  "[D]efault judgment is an appropriate sanction for defaults that arise from egregious or deliberate conduct."  *DIRECTV, LLC v. Wright*, No. 15-CV-474-FPG, 2019 U.S. Dist. LEXIS 216133, at *16 (W.D.N.Y. Dec. 16, 2019) (Geraci, C.J.) (internal quotations marks omitted) (quoting *1st Bridge LLC v. 682 Jam. Ave., LLC*, No. 08-CV-3401(NGG)(MDG), 2009 U.S. Dist. LEXIS 8859, at *2 (E.D.N.Y. Feb. 4, 2009) (quoting *American All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996)).  Here, there is no evidence that Ms. Blakesley's conduct was sufficiently egregious or deliberate to warrant the denial of her request that the default judgment be vacated under Rule 60(b)(1) FRCP.

---

[11] Such facts may make for an interesting question on a contracts exam in the first year of law school, but they should not be the basis for threats of bringing suit for breach of a settlement agreement in oral argument before a federal court.

17

Balancing the three factors established by the Second Circuit, the Court finds that those factors all move the needle in favor of Ms. Blakesley. First, there is no evidence that Ms. Blakesley's conduct was willful—there is no evidence that her conduct was egregious or deliberate. Next, on the facts before the Court, Ms. Blakesley has asserted a meritorious defense that, if proven at trial, would constitute a complete defense to this action. Finally, the Trustee has not demonstrated that he would be prejudiced by *vacatur* of the default judgment and by permitting Ms. Blakesley to defend the action. The motion to vacate the default judgment is **GRANTED**. For that reason, the Court need not and does not consider Ms. Blakesley's alternative request for relief under Rule 60(b)(3) or (b)(6) FRCP.

**The following curative actions are to be promptly taken:**

(1) The Clerk of Court is to note the *vacatur* of the default judgment on the docket in the adversary proceeding.

(2) Counsel to the Trustee is to immediately take such steps as are necessary to record the *vacatur* of the default judgment with both the Clerk for the District Court and the Ontario County Clerk.

(3) Counsel to the Trustee is further directed to immediately discontinue all collection efforts and to notify the Ontario County Sheriff and any third-party garnishees of that discontinuance.

(4) Finally, Ms. Blakesley is directed to serve and file an Answer to the Complaint in this action within 20 days of entry of this Decision and Order.

**IT IS SO ORDERED.**

DATED: December 16, 2021 _____/s/_____
      Rochester, New York        **HON. PAUL R. WARREN**
                                           United States Bankruptcy Judge